**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-11-0001037**
**30-APR-2013**
**08:23 AM**

NO. CAAP-11-0001037

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CHILD SUPPORT ENFORCEMENT AGENCY, STATE OF HAWAI'I,
Plaintiff-Appellee,
v.
MSH, Defendant-Appellee,
and
GVG, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-PATERNITY NO. 09-1-0707)

MEMORANDUM OPINION
(By:  Foley, Presiding J., Fujise and Reifurth, JJ.)

Defendant-Appellant GVG (Father) appeals from the
"Order Granting Defendant [MSH's (Mother)] Motion For Relief
After Order Or Decree Filed September 27, 2010" entered in the
Family Court of the First Circuit[1] (family court) on November 10,
2011.  The family court adjudicated the issue of child support
arrearage due by Father to Mother from January 2005 to September
2009 and ordered Father to pay $47,650.00.

### I.  Points On Appeal

On appeal Father contends the family court erred when
it (1) ordered Father to pay arrearage in the amount of

---

[1]     The Honorable Na'unanikina'u A. Kamali'i presided.

$47,650.00 to Mother; and (2) clearly erred in Findings of Fact (FOFs) 33, 49-55 & 63-69.

Father challenges the following FOFs:

33. The Court found credible Mother's testimony that Mother and [Father] had sexual relations and conceived the subject minor child in Manila, Philippines.

. . . .

49. Father's gross income for purposes of calculating child support was based on the Child Support Guidelines for the period from 2005 through 2009 which is sum of income from all sources that were regular and consistent, including but not limited to employment salaries and wages, military base and special pay and allowances, such as basic allowance for housing (BAH), basic allowance for subsistence (BAS), hazardous duty pay, cost-of-living allowance (COLA), selective reenlistment bonus (SRB), retired/retainer pay, and reserve pay was higher than the amount reported as total income on each of his tax returns for that period.

50. Evidence was introduced at trial that for the year 2005, Father's monthly gross income was $6,579 or the sum of his gross monthly: 1) base pay ($39,302.70 divided by 12 = $3,275.23) plus 2) Second job ($20,000 divided by 12 = $1,666.67 plus 3) BAH at $1376 and 4) BAS at $260.82.

51. [Father] testified at trial that he had no reason to believe that [Mother's] evidence of his BAS and BAH was incorrect.

52. Evidence was introduced at trial that for the year 2006, Father's monthly gross income was $11,675.59 or the sum of his gross monthly 1) base pay & 2nd job ($120,184 divided by 12 = $10,015) plus 2) BAH at $1,388 and 3) BAS $272.26.

53. Evidence was introduced at trial that for the year 2007, Father's monthly gross income was $4884.63 or the sum of his gross monthly: 1) base pay ($37,845 divided by 12 = $3,153.75) plus 2) BAH at $1451 and 3) BAS at $279.88.

54. Evidence was introduced at trial that for the year 2008, Fathers monthly gross income is $5849.11 or the sum of his gross monthly 1) base pay ($39,224.19 divided by 12 = $3,268.68[)] plus 2) BAH at $2286 and 3) BAS at $294.43.

55. Evidence was introduced at trial that for the year 2009, Fathers monthly gross income is $6866.87 or the sum of his gross monthly 1) base pay ($40,438 divided by 12 = $3,369[)] plus 2) BAH at $2,274 plus 3) BAS $323.87 and 4) COLA at 900.00.

. . . .

63. Based on the totality of the witnesses' testimony and credible evidence the Court finds that pursuant to the child support guidelines for the period from January 15, 2005 to December 31, 2005 or for eleven (11) months the amount of

2

child support payable by Father to Mother per month is $770 for a total of $8,470.00 for eleven months. The calculations are based on Father's monthly gross income of $6,579.00, Mother's imputed gross income of $1256.00, less no costs for childcare expenses and health insurance, which was waived by Mother.

64. Based on the totality of the witnesses' testimony and credible evidence the Court finds that pursuant to the child support guidelines for the period from January 1, 2006 to December 31, 2006 or for twelve (12) months the amount of child support payable by Father to Mother per month is $1,290 for a total of $15,480. The calculations are based on Father's monthly gross income of $11,675.00, Mother's imputed gross income of $1,256.00, less no costs for childcare expenses and health insurance, which was waived by Mother.

65. Based on the totality of the witnesses['] testimony and credible evidence the Court finds that pursuant to the child support guidelines for the period from January 1, 2007 to December 31, 2007 or for twelve (12) months the amount of child support payable by Father to Mother is $600 for a total of $7,200. The calculations are based on Father's monthly gross income of $4,885.00, Mother's imputed gross income of $1256.00, less no costs for childcare expenses and health insurance, which was waived by Mother.

66. Based on the totality of the witnesses['] testimony and credible evidence the Court finds that pursuant to the child support guidelines for the period from January 1, 2008 to December 31, 2008 or for twelve (12) months the amount of child support payable by Father to Mother per month is $700 per month for a total of $8,400. The calculations are based on Father's monthly gross income of $5,849.00, Mother's imputed gross income of $1256.00, less no costs for childcare expenses and health insurance, which was waived by Mother.

67. Based on the totality of the witnesses['] testimony and credible evidence the Court finds that for the period from January 1, 2009 to November 1, 2009 or for ten (10) months the amount of child support payable by Father to Mother per month is $810.00 per month for a total of $8,100.00. The calculations are based on Father's monthly gross income of $6,867.00, Mother's imputed gross income of $1256.00, less no costs for childcare expenses and health insurance, which was waived by Mother.

68. Based on the totality of the witnesses['] testimony and credible evidence the Court finds that the total amount of past due support for the period from January 15, 2005, the date of the minor child's birth, through November 2009 is $47,650.

69. The total amount of $47,650 was payable by Father by making one payment of $2500.00 to Mother within to [sic] weeks, and thereafter at a rate of $400.00 per month until the arrearage was paid in full.

3

## II.  STANDARDS OF REVIEW

### A.  Findings of Fact in Family Court

> The family court's FOFs are reviewed on appeal under the "clearly erroneous" standard.  A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.  "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001)).

### B.  Family Court Decisions

> Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion.  Thus, [an appellate court] will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawai'i 183, 189-90, 20 P.3d 616, 622-23 (2001)).  "Furthermore, the burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it."  Ek v. Boggs, 102 Hawai'i 289, 294-95, 75 P.3d 1180, 1185-86 (2003) (internal quotation marks, citation, and brackets omitted).

### C.  Evidence - Foundation for Introduction

"When a question arises regarding the necessary foundation for the introduction of evidence, the determination of whether proper foundation has been established lies within the discretion of the trial court, and its determination will not be overturned absent a showing of clear abuse."  State v. Assaye, 121 Hawai'i 204, 210, 216 P.3d 1227, 1233 (2009) (internal quotation marks and brackets omitted).

4

## III. DISCUSSION

### A. Findings of Fact

#### 1. FOF 33

The family court clearly erred in FOF 33 which finds the child was conceived in the Philippines. Both Mother and Father testified that Mother conceived the child in Seoul, South Korea. Since this FOF does not have any bearing on the dispute concerning arrearage, the error was harmless.

#### 2. FOFs 50-55 and 63-69

Father contends FOFs 50 through 55 and 63 through 69 are clearly erroneous where the family court based the findings on inadmissible evidence. FOFs 50 through 55 and 63 through 69 pertain to the family court determination of Father's income for the years 2005 through 2009. Father presented evidence of his taxable income for the years at issue and Mother sought to show Father received additional income not listed on his tax returns in the form of non-taxable military allowances. Though Father did not deny receiving the additional income, Father testified he was unsure of the amounts received for the years in question.

At the July 21, 2011 hearing, during direct examination of Father, Mother offered into evidence exhibits U through FF, which consisted of printed web pages from the internet. Mother offered nothing other than these web pages as evidence of authentication, stating the exhibits were "public record information off of the Internet." Father objected on grounds that the exhibits were not properly authenticated as required by the Hawaii Rules of Evidence (HRE). Despite Father's objections to the admissibility of Mother's exhibits U through FF, the family court admitted the exhibits into evidence as public records because they were from a "government website containing public information."

Evidence must be authenticated by extrinsic evidence under HRE Rule 901 (1993) or qualify under HRE 902 (1993) as

5

self-authenticating. HRE Rule 901(a) (1993) provides, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Mother provided no extrinsic evidence to authenticate or identify these web pages, and therefore, failed to satisfy HRE 901(a) as to exhibits U through FF.

HRE 902 provides in relevant part:

**Rule 902     Self-authentication.** Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

(1)     Domestic public documents under seal. A document bearing a seal purporting to the be that of the United States, or of any state, district, commonwealth, territory, or insular possession thereof, . . . or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

(2)     Domestic public documents not under seal. A document purporting to bear the signature in the official capacity of an officer or employee of any entity included in paragraph (1), having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.
        . . . .

(4)     Certified copies of public records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) or complying with any statute or rule prescribed by the supreme court.

(5)     Official publication. Books, pamphlets, or other publications purporting to be issued by public authority.

Mother's exhibits U through AA consisted of printed web pages entitled "Basic Allowance for Housing[,] Rate Query Results" with a website address containing a ".mil" domain printed in the lower left hand corner of the document and the

date the web page was printed. Each exhibit provided the amount of housing allowance received by a service member of a certain rank and housing area for each year from 2005 through 2009 and 2011. The ".mil" domain name is a top level domain name required to be used by the Department of Defense. U.S. Dep't of Def., Instr. 8410.01 Internet Domain Name Use and Approval (Apr. 14, 2008), http://www.dtic.mil/whs/directives/corres/pdf/841001p.pdf.

Similarly, Mother's exhibit FF is a printed web page entitled "Military Compensation: Basic Allowance for Subsistence (BAS)" for the year 2009 bearing a seal from the Office of the Secretary of Defense and the website address http://militarypay.defense.gov/pay/bas/. The exhibit also bears the notation: "This web site is published by the Office of the Under Secretary of Defense for Personnel and Readiness." Generally, the internet domain ".gov" denotes a website administered by a government entity. 41 C.F.R. §§ 102-173.5 (2012).[2] As exhibits U through AA and FF appear to be "other publications purporting to be issued by public authority," HRE Rule 902(5), they were self-authenticating and were properly admitted. See Williams v. Long, 585 F. Supp. 2d 679, 689 (D. Md. 2008) ("A proponent . . . could use the URL, date, and/or official title on a printed webpage to show that the information was from a public authority's website, and therefore, self-authenticating.")

However, Mother's exhibits BB through EE consisted of printed web pages from about.com.USMilitary, which displayed "Basic Allowance for Sustenance Rates" for the years 2005 through

---

[2]     Internet GOV Domain refers to the Internet top-level domain "dot-gov" operated by the General Services Administration for the registration of U.S. government-related domain names. In general, these names reflect the organization names in the Federal Government and non-Federal government entities in the United States. These names are now being used to promote government services and increase the ease of finding these services.

41 C.F.R. § 102-173.5

2008, showed no evidence that the information is in any way authored by the Department of Defense. Information obtained from private websites do not qualify as self-authenticating under HRE Rule 902. Fraserside IP L.L.C. v. Letyagin, 885 F.Supp.2d 906, 921 n.9 (N.D. Iowa 2012); Martinez v. America's Wholesale Lender, 446 Fed. App'x. 940, 944 (9th Cir. 2012).

In this case, the parties disputed the amount of child support arrearage due by Father for the care of the child from birth to November 1, 2009. Hawaii Revised Statutes (HRS) § 576D-7 (2006 Repl.),[3] which establishes guidelines for determining the amount of child support, lists income as the first consideration for calculating child support. HRS § 576D-7(a)(1) (Repl. 2006). Mother offered unauthenticated evidence and therefore, inadmissible evidence to prove some of Father's income. The family court used this inadmissible evidence to render its decision in this matter.

At the July 28, 2011 hearing, the family court stated:

> The Court: There's evidence and testimony -- we did not have your -- your financial statements, but the Court did look at the -- the evidence which was deduced from [Father] based upon what is public record based on his pay. So that testimony was very compelling to the Court in determining what his gross income is.
> . . . .
>
> The testimony touched on a lot of your BAH, BAS, and whether you did or did not receive it. And I believe based upon your testimony that you did receive those additional amounts -- the BAH and BAS -- and that they were in the amounts as stated for those particular years given your pay grade in those particular amounts.

---

[3] HRS § 576D-7 provides in relevant part,

§576D-7 **Guidelines in establish amount of child support.**
. . . .

The guidelines may include consideration of the following:

(1) All earnings, income, and resources of both parents; provided that earnings be the net amount, after deductions for taxes, and social security. Overtime and cost of living allowance may be deducted where appropriate[.]

> Now, if you had your pay stub, we would certainly be able to refute that. But that is what the Court is going to rely on based on the testimony and based upon the government website, so to speak, for those years that are in question.

The income documentation provided by Father shows an income far less than what was determined by the family court. No other admissible evidence in the record supports the BAS income figures used by the family court for the years 2005 through 2008. The family court erred in determining the amount of child support arrearage based on exhibits BB through EE.

Since the issue of child support arrearage must be remanded, Father's additional arguments challenging certain conclusions of law are moot.

### IV. CONCLUSION

The "Order Granting [MSH's] Motion For Relief After Order Or Decree Filed September 27, 2010" entered in the Family Court of the First Circuit on November 10, 2011 is vacated and this case is remanded.

DATED: Honolulu, Hawai'i, April 30, 2013.

On the briefs:

Scot Stuart Brower
for Defendant-Appellant GVG.

Thomas D. Collins, III
for Defendant-Appellee MSH.

Presiding Judge

Associate Judge

Associate Judge

9